**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| HANS TIEFENTHALER, on behalf of himself and others similarly situated, | CIVIL ACTION FILE NO. |
| Plaintiff, | |
| v. | **PROPOSED CLASS ACTION** |
| PROGRESSIVE DIRECT INSURANCE COMPANY | **JURY TRIAL DEMANDED** |
| Defendant. | |

**Preliminary Statement**

1. Plaintiff Hans Tiefenthaler ("Plaintiff" or "Mr. Tiefenthaler") brings this action to enforce the consumer-privacy provisions of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, a federal statute enacted in 1991 in response to widespread public outrage about the proliferation of intrusive, nuisance telemarketing practices. *See Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 745 (2012).

2. Mr. Tiefenthaler alleges that Progressive Direct Insurance Company ("Progressive") commissioned automated telemarketing calls to him and other class members without their prior express written consent. The calls were made pursuant to an agreement between Progressive and All Web Leads, Inc. ("All Web Leads"), a company that Progressive hired to make telemarketing calls on its behalf.

3. Mr. Tiefenthaler and class members never consented to receive these calls. In fact, Mr. Tiefenthaler even registered his number on the National Do Not Call Registry to avoid unwanted telemarketing calls.  Progressive nonetheless engaged in a nationwide telemarketing

campaign designed to sell insurance to consumers. Because this telemarketing campaign placed calls to many thousands of potential customers *en masse*, Mr. Tiefenthaler brings this action on behalf of a proposed nationwide class of other persons who received illegal telemarketing calls from or on behalf of Progressive.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

### Parties

5. Plaintiff Hans Tiefenthaler is a resident of the Commonwealth of Massachusetts and this District.

6. Defendant Progressive Direct Insurance Company is a Delaware corporation with its principal place of business in Ohio.

### Jurisdiction & Venue

7. The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012).

8. The Court has personal jurisdiction over Progressive because it provides insurance services in this District and attempted to sell Plaintiff insurance services in this District through the automated telemarketing call placed to Plaintiff.

9. Venue is proper under 28 U.S.C. § 1391(b)(1) because a substantial part of the events or omissions giving rise to the claim occurred in this District, as the automated call at issue was sent into this District.

## TCPA Background

10. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

11. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service or to a number that is charged per call. *See* 47 U.S.C. § 227(b)(1)(A). The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

14. In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The Growing Problem of Automated Telemarketing

15. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting Off Robocalls* (July 22, 2016), https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls (statement of FCC chairman).

16. "The FTC receives more complaints about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016), https://www.ftc.gov/system/files/documents/advocacy_documents/commentstaff-ftc-bureau-consumer-protection-federal-communications-commission-rulesregulations/160616robocallscomment.pdf.

17. In fiscal year 2017, the FTC received 4,501,967 complaints about robocalls, compared with 3,401,614 in 2016. Federal Trade Commission, *FTC Releases FY 2017 National Do Not Call Registry Data Book and DNC Mini Site* (Dec. 18, 2017), https://www.ftc.gov/news-events/press-releases/2017/12/ftc-releases-fy-2017-nationaldo-not-call-registry-data-book-dnc.

18. *The New York Times* reported on the skyrocketing number of robocall complaints and widespread outrage about illegal telemarketing. Tara Siegel Bernard, *Yes, It's Bad. Robocalls, and Their Scams, Are Surging*, N.Y. Times (May 6, 2018), https://www.nytimes.com/2018/05/06/your-money/robocalls-riseillegal.html; *see also* Katherine Bindley, *Why Are There So Many Robocalls? Here's What You Can Do About Them*, Wall St. J. (July 4, 2018), https://www.wsj.com/articles/why-there-are-so-manyrobocalls-heres-what-you-can-do-about-them-1530610203.

**Factual Allegations**

Call to Mr. Tiefenthaler

19. Plaintiff Tiefenthaler is a "person" as defined by 47 U.S.C. § 153(39).

20. Mr. Tiefenthaler's telephone number, (XXX) XXX-0111, is assigned to a cellular telephone service.

21. Mr. Tiefenthaler registered his telephone number, (XXX) XXX-0111, on the National Do Not Call Registry over a year ago to avoid unwanted telemarketing calls.

22. On July 2, 2019, Mr. Tiefenthaler nonetheless received a telemarketing call.

23. When he answered the phone, a series of pre-recorded messages played.

24. The pre-recorded message identified "InsuranceQuotes.com".

25. "InsuranceQuotes.com" is a website owned by All Web Leads.

26. The call played a series of pre-recorded messages and then the call was ended.

27. Later on July 2, 2019, Mr. Tiefenthaler received an automated telemarketing call from All Web Leads.

28. This call was made with an ATDS, as that term is defined by the TCPA.

29. The Plaintiff knew that it was made with an ATDS because right before the call connected there was a distinctive "click and pause" sound, which is associated with a predictive dialing system.

30. The pause signifies the algorithm of the predictive dialer operating. The predictive dialer dials thousands of numbers at once, and only transfers the call to a live agent once a human being is on the line.

31. On information and belief, the dialing system used by All Web Leads also has the capacity to store telephone numbers in a database and dial them automatically with no human intervention.

32. Loading a list of telephone numbers into the dialing system and pressing a single command does this.

33. On information and belief, the dialing system can also produce numbers using a sequential number generator and dial them automatically.

34. The dialing system can do this by inputting a straightforward computer command.

35. Following that command, the dialing system will sequentially dial numbers.

36. First, it would dial a number such as (555) 000-0001, then (555) 000-0002, and so on.

37. This would be done without any human intervention or further effort.

38. On information and belief, the dialing system used by used by All Web Leads is driven by software that utilizes an algorithm that determines when All Web Leads will make a phone call. The dialer makes this determination automatically and without human intervention. These characteristics too are indicative of an ATDS.

39. The call to Mr. Tiefenthaler's call was transferred from All Web Leads directly to a Progressive Insurance Agent.

40. The Progressive Insurance Agent promoted their services and attempted to sell Mr. Tiefenthaler insurance, including by providing him with an insurance quote.

41. Confirming Progressive's involvement, the e-mail address that sent the quote was customerservice@e.progressive.com.

42. The Plaintiff's quote number was "836680333."

43. Plaintiff and the other call recipients were harmed by these calls. They were temporarily deprived of legitimate use of their phones because the phone line was tied up during the telemarketing calls and their privacy was improperly invaded. Moreover, these calls injured Plaintiff and the other call recipients because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff and the class.

### Progressive's Liability for Calls Initiated by All Web Leads

44. For more than twenty years, the FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In re Rules & Regulations Implementing the TCPA*, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (¶ 13) (1995).

45. In its January 4, 2008 ruling, the FCC likewise held that a company on whose behalf a telephone call is made bears the responsibility for any violations. *Id.* (specifically recognizing "on behalf of" liability in the context of an autodialed or prerecorded message call sent to a consumer by a third party on another entity's behalf under 47 U.S.C. § 227(b)).

46. In fact, the Federal Communication Commission has instructed that sellers such as Progressive may not avoid liability by outsourcing telemarketing to third parties, such as All Web Leads:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions. This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside the United States, as is often the case. Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain effective relief. As the FTC noted, because "[s]ellers may have thousands of 'independent' marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy."

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶ 37) (internal citations omitted).

47. On May 9, 2013, the FCC released a Declaratory Ruling holding that a corporation or other entity that contracts out its telephone marketing "may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers."[1]

48. The May 2013 FCC Ruling held that, even absent evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for

---

[1] *In re Joint Petition Filed by DISH Network, LLC et al. for Declaratory Ruling Concerning the TCPA Rules*, 28 FCC Rcd 6574, 6574 (¶ 1) (2013) ("May 2013 FCC Ruling").

telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (¶ 34).

49. The May 2013 FCC Ruling further clarifies the circumstances under which a telemarketer has apparent authority:

> [A]pparent authority may be supported by evidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control, including: access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information. The ability by the outside sales entity to enter consumer information into the seller's sales or customer systems, as well as the authority to use the seller's trade name, trademark and service mark may also be relevant. It may also be persuasive that the seller approved, wrote or reviewed the outside entity's telemarketing scripts.  Finally, a seller would be responsible under the TCPA for the unauthorized conduct of a third-party telemarketer that is otherwise authorized to market on the seller's behalf if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

FCC Rcd at 6592 (¶ 46).

50. Finally, courts have held that sellers can be held vicariously liable under a ratification theory when they accept the benefit of a telemarketer's calls. *See, e.g.*, *Smith v. State Farm Mut. Auto. Ins. Co.*, 30 F. Supp. 3d 765, 779 (N.D. Ill. 2014).  "A principal can ratify an act by (a) manifesting assent that the act shall affect the person's legal relationships, or (b) conduct that justifies a reasonable assumption that the person so consents." *Id*. quoting Restatement (Third) of Agency § 4.01(1) (2006).

51. Progressive is vicariously liable for the calls placed by All Web Leads to Plaintiff and proposed Class members because All Web Leads placed the calls at issue in this Complaint on behalf of Progressive.  On information and belief, All Web Leads and Progressive have a contract under which Progressive pays All Web Leads to place autodialed telemarketing calls to

consumers on its behalf and then transfer those calls to Progressive representatives. Under the contract, Progressive controls the manner and timing under which these telemarketing calls are placed. Progressive further specifies certain criteria in respect to the type of consumer it directs All Web Leads to call and transfer to its representatives for purposes of selling insurance. Progressive benefitted from the calls placed by All Web Leads because it provided Progressive with additional business prospects.

52.    What's more, in its May 2013 FCC Ruling, the FCC made clear that called parties may obtain "evidence of these kinds of relationships . . . through discovery, if they are not independently privy to such information." *Id.* at 6592-593 (¶ 46). Evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent." *Id.* at 6593 (¶ 46).

### Class Action Allegations

53.    As authorized by Rule 23(b)(2) and/or (b)(3) of the Federal Rules of Civil Procedure, Plaintiff brings this action on behalf of a class of all other persons or entities similarly situated throughout the United States.

54.    The Class of persons Plaintiff proposes to represent is tentatively defined as:

> All persons within the United States to whom: (a) Defendant and/or a third party acting on its behalf, made one or more non-emergency telephone calls; (b) to their cellular telephone number or number that is charged per call; (c) using an automatic telephone dialing system or an artificial or prerecorded voice; and (d) at any time in the period that begins four years before the date of the filing of this Complaint to trial.

55. Excluded from the Class are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

56. The Class as defined above are identifiable through phone records and phone number databases.

57. The potential Class's members number at least in the thousands. Individual joinder of these persons is impracticable.

58. Plaintiff is a member of the Class.

59. There are questions of law and fact common to Plaintiff and to the proposed Class, including but not limited to the following:

    a. Whether Defendant violated the TCPA by using automated calls to contact putative class members cellular telephones;

    b. Whether Defendant's agent(s) initiated calls without obtaining the recipients' prior express invitation or permission for the call;

    c. Whether Defendant is vicariously liable for the telemarketing conduct of its agent(s); and

    d. Whether the Plaintiff and the class members are entitled to statutory damages because of Defendant's actions.

60. Plaintiff's claims are typical of the claims of class members.

61. Plaintiff is an adequate representative of the Class because his interests do not conflict with the interests of the class, he will fairly and adequately protect the interests of the

class, and he is represented by counsel skilled and experienced in class actions, including TCPA class actions.

62. Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy. The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

63. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

64. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

## Legal Claims

### Count One:
### Violation of the TCPA's Automated Call provisions

65. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

66. The Defendant violated the TCPA by (a) initiating automated telephone solicitations to telephone numbers, or (b) by the fact that others made those calls on its behalf. *See* 47 U.S.C. § 227(b).

67. The Defendant's violations were willful and/or knowing.

68. Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendant and/or their affiliates, agents, and/or other persons or entities acting

on Defendant's behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

### Relief Sought

WHEREFORE, for himself and all class members, Plaintiff requests the following relief:

A.  Injunctive relief prohibiting Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf from making calls, except for emergency purposes, to any telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

B.  Because of Defendant's violations of the TCPA, Plaintiff Tiefenthaler seeks for himself and the other putative Class members $500 in statutory damages per violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3).

D.  An order certifying this action to be a proper class action under Federal Rule of Civil Procedure 23, establishing any appropriate Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

E.  Such other relief as the Court deems just and proper.

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

    Respectfully Submitted for Plaintiff,

*/s/ Anthony Paronich*
Anthony Paronich
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400

Hingham, MA 02043
Telephone:  (617) 485-0018
Facsimile:   (508) 318-8100
Email: anthony@paronichlaw.com